**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

Z BUSINESS PROTOTYPES LLC          Civil Action No. 20-10075
d/b/a ANY GARMENT CLEANERS 2,

       Plaintiff,          **OPINION**

   v.

TWIN CITY FIRE INSURANCE
COMPANY,

       Defendant.

---

**APPEARANCES**:

ALAN C. MILSTEIN
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, PC
EASTGATE CORPORATE CENTER
308 HARPER DRIVE
SUITE 200
MOORESTOWN, NJ 08057

     *Counsel on behalf of Plaintiff*

JAMES L. BROCHIN
STEPTOE & JOHNSON LLP
1114 AVENUE OF THE AMERICAS
35TH FLOOR
NEW YORK, NY 10036

     *Counsel on behalf of Defendant Twin City Fire*
     *Insurance Company*

**HILLMAN**, District Judge

    Presently before the Court is Defendant Twin City Fire

Insurance Company's ("Twin City" or "Defendant") Motion to

Dismiss.  For the reasons explained below, the Court will grant

Defendant's Motion to Dismiss.

1

**BACKGROUND**

Plaintiff operates stores and plants that provide laundry services.  (ECF No. 26 ¶8.)  To protect its business from potential loss, Plaintiff purchased an insurance policy from Defendant, who issued a Business Owner's Policy bearing No. 13 SBA AA1565 for the period of April 1, 2019 to April 1, 2020 and April 1, 2020 to April 1, 2021 (the "Policy"). (Id. A.1.) Plaintiff paid premiums for the Policy.  (Id.)  The Policy is an all-risk property damage policy, which covers all risks of loss except for risks that are expressly and specifically excluded. (Id. A.5.)

Relevant here, the Policy is modified by a form titled "Limited Fungi, Bacteria or Virus Coverage" (the "Virus Exclusion").  (ECF No. 26-2 at 127; ECF No. 26-3 at 131.)  The Virus Exclusion specifies that it applies to and modifies all coverages in the Special Property Coverage Form, including the Business Income, Civil Authority, Extra Expense, and Dependent Properties coverages.  (ECF No. 26-2 at 127; ECF No. 26-3 at 131.)  The Virus Exclusion provides, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss," Defendant "will not pay for loss or damage caused directly or indirectly by [the] . . . [p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus."  (ECF No. 26-2 at 127 § A.2.i; ECF No.

2

26-3 at 131 § A.2.i.)  Later, in an exception to this exclusion,
the Policy specifies that the "exclusion does not apply: (1)
When 'fungi', wet or dry rot, bacteria or virus results from
fire or lighting; or (2) To the extent coverage is provided in
the Additional Coverage – Limited Coverage for 'Fungi', Wet Rot,
Dry Rot, Bacteria and Virus with respect to loss or damage by a
cause of loss other than fire or lighting."  (ECF No. 26-2 at
127 § A.2.i; ECF No. 26-3 at 131 § A.2.i.)  The Limited Virus
Coverage provision is a carveout to the Virus Exclusion that
provides up to $50,000 in coverage but "only applies when the .
.. virus is the result of one or more of the following causes .
. . (1) A 'specified cause of loss' other than fire or
lightning; (2) Equipment Breakdown Accident occurs to Equipment
Breakdown Property, if Equipment Breakdown applies to the
affected premises."  (ECF No. 26-2 at 127-28 § B.1.a; ECF No.
26-3 at 131-32 § B.1.a).  The Policy defines "specified cause of
loss" as "[f]ire; lightning; explosion, windstorm or hail;
smoke; aircraft or vehicles; riot or civil commotion; vandalism;
leakage from fire extinguishing equipment; sinkhole collapse;
volcanic action; falling objects; weight of snow, ice or sleet;
water damage." (ECF No. 26-2 at 51 § G.19; ECF No. 26-3 at 54 §
G.19).

     Plaintiff alleges that it experienced a "Covered Cause of
Loss" by virtue of the Closure Orders, including Governor

Murphy's Executive Order Number 107, which denied use of 1444 Marlton Pike East, Cherry Hill, New Jersey 08034 (the "Covered Property") "by causing a necessary suspension of operations during a period of restoration." (ECF No. 26 B.14). Due to this closure, Plaintiff filed an insurance claim with Defendant for coverage for its loss of business income. Defendant denied coverage for Plaintiff's loss.

Plaintiff's Amended Complaint against Defendant asserts two claims for breach of contract, for Defendant's actions in denying coverage under the Policy's Loss of Business Income and Civil Authority coverage provisions, and one claim for bad faith, for denying coverage under the Policy. On January 19, 2021, Defendant filed a Motion to Dismiss, which largely relies on the Policy's Virus Exclusion in arguing that Plaintiff's Amended Complaint must be dismissed. (ECF No. 28). Plaintiff filed a brief in opposition to the motion on February 15, 2021, (ECF No. 32), and Defendant followed with a reply brief in further support of the motion on March 2, 2021. (ECF No. 34). The motion is now fully briefed and ripe for adjudication.

## DISCUSSION

### A.   Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should

identify allegations that, because they are no more than
conclusions, are not entitled to the assumption of truth; and
(3) when there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.  Malleus v.
George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,
quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly.").  "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents

6

attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

### C.   Analysis

As stated above, Plaintiff is pursuing breach of contract claims and a bad faith claim related to Defendant's denial of Plaintiff's insurance claim for loss of business income caused by COVID-19 related government shutdown orders.

#### a. Breach of Contract Claims

This case comes on the heels of this Court's prior Opinion in Arrowhead Health & Racquet Club, LLC v. Twin City Fire Ins. Co., No. 20-08968-NLH-KMW, 2021 U.S. Dist. LEXIS 114876 (D.N.J. June 21, 2021), in which the Court addressed similar breach of contract claims related to denial of insurance coverage for COVID-19 shutdown related losses.  In that case, this Court held that the virus exclusion in the parties' contract, which was an

identical clause found in the Policy at the center of the present case, clearly applied and barred coverage.  For substantially the same reasons, the Court reaches the same result here.

Both parties appear to agree that New Jersey law applies here.  Under New Jersey law, the interpretation of an insurance policy is a "question of law."  Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J. 597, 605 (2012). The language of an insurance policy "should be interpreted according to its plain and ordinary meaning."  Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 175 (1992).  Where the terms of the policy are ambiguous and there is doubt regarding the existence of coverage, the ambiguity is ordinarily resolved in favor of the insured.  See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co., 179 N.J. 87, 102 (2004).  However, where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written."  Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J. Super. 409, 416 (N.J. Super. Ct. App. Div. 1994).  The court "should not write for the insured a better policy of insurance than the one purchased." Buczek v. Continental Cas. Ins. Co., 378 F.3d 284, 288 (3d Cir. 2004) (citing Vassiliu v. Daimler Chrysler Corp., 178 N.J. 286 (N.J. 2004)).

Under New Jersey law, "exclusions in [an] insurance policy

8

should be narrowly construed." <u>Nav-Its, Inc. v. Selective Ins.</u>
<u>Co. of Am.</u>, 183 N.J. 110, 119 (2005) (citing <u>Princeton Ins. Co.</u>
<u>v. Chunmuang</u>, 151 N.J. 80, 95 (1997)).  "Nevertheless, if the
exclusion is 'specific, plain, clear, prominent, and not
contrary to public policy,' it will be enforced as written."
<u>Id.</u> (citing <u>Princeton Ins. Co.</u>, 151 N.J. at 80).

The Policy here includes a prominent Virus Exclusion that
explicitly provides that Defendant "will not pay for loss or
damage caused directly or indirectly by [the] . . . [p]resence,
growth, proliferation, spread or any activity of 'fungi', wet
rot, dry rot, bacteria or virus." (ECF No. 26-2 at 127 § A.2.i;
ECF No. 26-3 at 131 § A.2.i).  Plaintiff specifically alleges it
"experienced a 'Covered Cause of Loss' by virtue of the Closure
Order which denied use of the Covered Property by causing a
necessary suspension of operations during a period of
restoration."  (ECF No. 26 B.14).  Plaintiff first argues the
Virus Exclusion is inapplicable because the Closure Orders, not
COVID-19, were the direct and indirect cause of Plaintiff's
business interruption losses.  This Court disagrees.

Governor Murphy's Executive Orders 103 and 107 were issued
because of COVID-19.  N.J. Exec. Order 107 (noting "in light of
the dangers posed by COVID-19, I issued Executive Order No. 103"
and "given the rapidly rising incidence of COVID-19, temporarily
closing non-essential retail businesses will strengthen New

9

Jersey's efforts to slow the spread of COVID-19"). "Therefore, '[b]ecause the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus.'" Arrowhead Health & Racquet Club, LLC, 2021 U.S. Dist. LEXIS 114876, at *7 (quoting Delaware Valley Plumbing Supply, Inc. v. Merchants Mutual Insurance Company, No. 20-8257, 2021 U.S. Dist. LEXIS 28265, at *10 (D.N.J. Feb. 16, 2021)); see also Sweetberry Holdings LLC v. Twin City Fire Ins. Co., No. 20-08200, 2021 U.S. Dist. LEXIS 133792, at *16 n.7 (D.N.J. July 19, 2021) ("As this Court and many others have held, COVID-19 is the cause of government closure orders; the orders only exist because of the virus.").

As this Court previously noted in Delaware Valley Plumbing, throughout the current COVID-19 pandemic "a significant number of courts, both in this Circuit and across the country, have analyzed virus exclusion clauses that were either identical or highly similar to the one in Plaintiff's Policy, and consistently" held that the such clauses barred coverage for insurance claims related to loss or damages caused by the widespread government shut down orders issued in response to COVID-19. 2021 U.S. LEXIS 28265, at *9. This Court then cited to a significant number of cases, both within this Circuit and without, that had reached this exact conclusion. See id.

(citing cases).

Several months later, in Arrowhead, which involved an identical Virus Exclusion to the one at issue here, this Court recognized that this "trend has continued" and highlighted that in the months since Delaware Valley Plumbing was issued "two courts in this district have held that the exact virus exclusion clause found in the policy here bars coverage for insurance claims like those put forth by Plaintiffs." Arrowhead Health & Racquet Club, LLC, 2021 U.S. Dist. LEXIS 114876, at *8 (citing Stern & Eisenberg, P.C. v. Sentinel Ins. Co. Ltd., No. 20-11277, 2021 U.S. Dist. LEXIS 72427 (D.N.J. Apr. 14, 2021); Podiatry Foot & Ankle Inst. P.A. v. Hartford Ins. Co. of the Midwest, No. 20-20057, 2021 U.S. Dist. LEXIS 69598 (D.N.J. Apr. 9, 2021)). This Court further noted that "numerous courts in this district have addressed essentially identical claims based on the virus exclusion clauses with similar language, and have repeatedly made the same finding." Id. (citing cases).

Unsurprisingly, this trend has continued and three more courts in this district have held that virus exclusion clauses that were either identical or similar to the one at issue here bars coverage for insurance claims like Plaintiff's. Sweetberry Holdings LLC, 2021 U.S. Dist. LEXIS 133792, at *16-17 n.7 ("As this Court and many others have held, COVID-19 is the cause of government closure orders; the orders only exist because of the

virus. . . . Accordingly, the Court finds that the Virus
Exclusion is applicable to Plaintiff's losses and thus bars
coverage.); see also Metuchen Ctr. v. Liberty Mut. Ins. Co., No.
20-12584, 2021 U.S. Dist. LEXIS 141654, at *13 (D.N.J. July 29,
2021)("Here, I do not find the Virus Exclusion to be genuinely
ambiguous. The Virus Exclusion plainly provides that West
American will not pay for losses caused directly or indirectly
by a virus. Courts in the State of New Jersey and this District,
including this Court, have repeatedly found similar virus
exclusions to be unambiguous."); T&L Catering, Inc. v. Hanover
Ins. Grp., Inc., No. 20-07934, 2021 U.S. Dist. LEXIS 131057, at
*11-12 (D.N.J. July 14, 2021)("Here, Plaintiff contends that the
Closure Orders proximately caused its losses, because they
required all restaurant businesses to discontinue in-person
service. Like numerous other courts that have confronted this
issue, I disagree. Indeed, even though the Closure Orders were
an immediate cause of Plaintiff's losses, they were not the
predominant cause. Rather, the predominant cause of Plaintiff's
losses was the COVID-19 virus because, but for the virus, the
State of New Jersey would not have issued the Closure Orders.").

In a related argument, Plaintiff next argues the Virus
Exclusion is inapplicable because the clause itself does not
refer to a pandemic or damages related to a pandemic. One court
in this District addressing an identical Virus Exclusion

recently held "as a point of clarification, the Virus Exclusion need not explicitly refer to a pandemic to be applicable." Sweetberry Holdings LLC, 2021 U.S. Dist. LEXIS 133792, at *14 (citing Beach Glo Tanning Studio Inc. v. Scottsdale Insurance Company, No. 20-13901, 2021 U.S. Dist. LEXIS 102120 (D.N.J. May 28, 2021)).  "Consistent with numerous opinions addressing COVID-19 insurance claims, this Court will not draw a distinction between losses stemming from a virus or a pandemic in determining the applicability of a Virus Exclusion clause." Id. (citing Moody v. Hartford Fin. Grp., Inc., No. 20-2856, 2021 U.S. Dist. LEXIS 7264 (E.D. Pa. Jan. 14, 2021); Santo's Italian Cafe LLC v. Acuity Ins. Co., No. 20-01192, 2020 U.S. Dist. LEXIS 239382 (N.D. Ohio Dec. 21, 2020); Newchops Rest. Comcast LLC v. Admiral Indem. Co., No. 20-1869, 2020 U.S. Dist. LEXIS 238254 (E.D. Pa. Dec. 17, 2020); Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc., No. 20-04434, 2020 U.S. Dist. LEXIS 234651 (N.D. Cal. Dec. 14, 2020)).  This Court agrees with the Sweetberry Holdings LLC's holding that the "the Virus Exclusion unambiguously applies to loss stemming from the COVID-19 pandemic" because "[t]he term 'pandemic' simply defines the prevalence of a virus or disease." Id.

Plaintiff next argues that, even if the Virus Exclusion bars its claims, it is entitled to coverage under the Policy's Limited Virus Coverage exception to the Virus Exclusion.

13

Plaintiff, however, does not allege that the virus was caused by any specified cause of loss.  Instead, it argues that the requirement is impossible to satisfy, and thus "the Limited Virus Coverage endorsement is illusory and against public policy."  (ECF No. 32 at 34).  Under New Jersey law, this "Court must 'decline to construe the Policy in a manner that makes promises in the coverage section illusory.'" Childrens Place, Inc. v. Great Am. Ins. Co., No. 18-11963, 2019 U.S. Dist. LEXIS 70109, at *14 (D.N.J. April 25, 2019) (citing Customized Distrib. Servs. v. Zurich Ins. Co., 373 N.J. Super. 480, 862 A.2d 560, 568 (N.J. Super. Ct. App. Div. 2004)).  "New Jersey Courts, in accordance with the Restatement [of Contracts], define an illusory promise as a 'promise which by [its] terms make performance entirely optional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue.'" Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 577-78 (D.N.J. 2002) (quoting Restatement (Second) of Contracts § 2).

However, while a court may not uphold a truly illusory contract, "[g]enerally, courts should seek to enforce contracts and avoid deeming them illusory." Id. at 578 (citing Russell v. Princeton Labs. Inc., 50 N.J. 30, 38 (N.J. 1967)).  As described above, the Limited Virus Coverage clause provides an exception to the Virus Exclusion Clause, which essentially states that

Defendant will provide coverage for loss caused by direct
physical damage, which itself must be caused by a virus that is
the result of one of the specified causes of loss listed in the
contract.  Plaintiff's argument, at its core, appears to
essentially be that it is impossible to put forth a set of facts
under which a virus would be the cause of direct physical loss
and would have been caused by one of the specified causes of
loss, namely "explosion, windstorm or hail; smoke; aircraft or
vehicles; riot or civil commotion; vandalism; leakage from fire
extinguishing equipment; sinkhole collapse; volcanic action;
falling objects; weight of snow, ice or sleet; water damage."
(ECF No. 26-2 at 51 § G.19; ECF No. 26-3 at 54 § G.19).

This Court as well as another court in this district have
recently rejected this exact argument posed against this exact
Limited Virus Coverage clause.  Arrowhead Health & Racquet Club,
LLC, 2021 U.S. Dist. LEXIS 114876, at *15; Sweetberry Holdings
LLC, 2021 U.S. Dist. LEXIS 133792, at *17-20.  In doing so, both
courts relied on Ultimate Hearing Solutions II, LLC v. Twin City
Fire Insurance Company, No. 20-2401, 2021 U.S. Dist. LEXIS 7266
(E.D. Pa. Jan. 14, 2021), which also rejected the exact argument
posed against the exact Limited Virus Coverage clause at issue
here.  In doing so, the Court first stated that "Plaintiffs fail
to acknowledge that this Limited Virus Coverage provision also
applies to fungi, wet rot, dry rot, and bacteria, not just

15

viruses. While it may be difficult to think of a hypothetical situation where a virus causes physical damage to a property, it is not difficult to imagine that wet rot, dry rot or fungi can cause damage that would satisfy the 'direct physical loss or direct physical damage' requirement." Id. at *27.  Second, it noted that the defendant had in fact identified at least one case where insured property was damaged due to a virus caused by one of the specified causes of loss: in Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Nebraska, 247 Neb. 526, 528 N.W.2d 329 (1995), a court had found coverage for an insurance claim when a windstorm caused insured livestock to become infected with the pseudorabies virus.

As Plaintiff has failed to plead any facts that would show that its losses here fall within the Limited Virus Coverage clause, its claims are barred by the Virus Exclusion and must be dismissed.  And since the Virus Exclusion clearly and unambiguously bars all coverage for Plaintiff's insurance claims, its breach of contract claims are therefore futile, and will be dismissed with prejudice.

### b. Bad faith Claim

Defendant also moves to dismiss Plaintiff's bad faith claim.  "In order to state a claim for bad faith denial of insurance coverage, a plaintiff must allege the following: (1) the insurer lacked a reasonable basis for denying benefits, and

16

(2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." <u>Shore Options Inc. v. Great Am. Ins. Grp.</u>, No. 20-03835, 2020 U.S. Dist. LEXIS 172263, at *16 (D.N.J. Sept. 21, 2020)(citing <u>Pickett v. Lloyd's</u>, 131 N.J. 457, 473 (1993)). "However, if 'a claim is fairly debatable, no liability in tort will arise." <u>Id.</u> (quoting <u>Pickett</u>, 131 N.J. at 473)(internal citation and quotation omitted). "Moreover, there can be no bad faith claim for denial of coverage if the insurer was correct as a matter of law in denying coverage." <u>Id.</u> (citing <u>Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.</u>, 193 F.3d 742, 751 n.9 (3d Cir. 1999)); <u>see also</u> <u>Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.</u>, 244 F. App'x 424, 435 (3d Cir. 2007)(same). However, "if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives." <u>Ultimate Hearing Sols. II, LLC</u>, 2021 U.S. Dist. LEXIS 7266, at *31 (citing <u>Gallatin Fuels</u>, 244 F. App'x at 435) (analyzing plaintiff's bad faith claim because it was "based largely on behavior beyond [Defendant's] denial of the claim") (citations and quotations omitted).

In the context of a claim for coverage based solely on the Closure Orders where there are no claims that the insured property or nearby property has been physically damaged and

17

access to Plaintiff's property has not been entirely prohibited, there is nothing to investigate: coverage does not exist on the face of that claim.  Therefore, Plaintiff has not shown bad faith in Defendant's lack of investigation or by denying Plaintiff's claim.  Discovery on this issue would not change that conclusion.  As detailed above, the Court has already concluded Defendant was correct as a matter of law in denying Plaintiff coverage.  Accordingly, the Court will dismiss with prejudice Plaintiff's bad faith claim.  See Shore Options Inc., 2020 U.S. Dist. LEXIS 172263, at *17 ("Because the Court has found that Great American was not obligated to provide coverage under the terms of the Policy, the bad faith claim similarly fails.").

## CONCLUSION

For the reasons stated above, the Court will grant Twin City's Motion to Dismiss.

An appropriate Order will be entered.


Date: August 9, 2021                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.